31878.   MINICH *v*. THE STATE.

Decided May 22, 1948.

*Thomas A. Jacobs Jr., Deal & Anderson, W. G. Neville,* for plaintiff in error.

*O. L. Long, Solicitor, R. H. Casson,* contra.

MacIntyre, P. J.  The testimony of Mr. Edward A. Perkins, Assistant Vice-President of the Savannah Bank and Trust Company, showed that the account of the Southeastern Motors of Georgia was opened in the bank by Minich and Taylor and the checks to be honored on such account were required to be signed by both Minich and Taylor; that some of the checks given for the original deposit when the account was opened "didn't go through and we [the bank] had to charge them back to our account, so from then on we had an exchange on any check not being drawn on our bank for deposit;" that the bank from then on received checks drawn on other banks for collection only ·and did not credit them to the account of the Southeastern Motors until they were paid—thus Minich and Taylor knew that they were not receiving credit on their drawing account with the bank merely because a check was left in the bank for deposit, but that they would only receive such credit if and when the check was paid by the drawee bank; that the account was so unsatisfactory that the witness [Perkins] on behalf of the bank, after so many checks began to be drawn in March without sufficient funds in the bank to cover them, told Minich and Taylor that

the bank would have to close out their account if they [Minich and Taylor] did not improve their way of handling the account, and that on April 12, 1947, the account was closed out by sending them the bank's check for the balance left therein, $9.15; that during the month of March there were forty-eight charges against the Southeastern Motors' account for checks drawn on the account which had to be returned for insufficient funds; that this "would not necessarily mean it was forty-eight different checks," but "would mean the same check could have been presented two or three times during that time." Be that as it may, there were approximately forty-eight times during the single month of March when checks signed by Minich and Taylor were presented for payment and payment had to be refused for insufficient funds. The checks upon which the prosecution in counts one and two was based were signed, one on March 19, 1947, and the other on March 26, 1947; and these are the counts upon which the defendant was convicted. On March 19, 1947, the balance to the Southeastern Motors account was $88; on March 20, $79; 21, $56; 22, $19; 24, $12; 25, $3008; 26, $5706; 27, $7; 28, $1; 29, $832; 31, $76. There was one additional deposit of $350 after March 31, added to $76, and it dwindled down to $9.15 on April 11, when the bank closed the account. Mr. Perkins said, "At any time during March, several thousand dollars worth of checks could have cleared; they could have cleared provided they got in our hands ahead of some other checks. He had $3000 on March 25th and he had $5000 on March 26th. But he could not have paid these checks and the other checks that came in too. He had this amount of balance at the close of business: he had $5000 at the close of business on March 26th, but his balance immediately went down to $7 on March 27th by payment of these checks."

Code § 13-9933 provides: "Any person who, with intent to defraud, shall make, or draw, or utter, or deliver any check, draft or order for the payment of money upon any bank, or other depository, knowing at the time of such making, drawing, uttering or delivering that the maker or drawer has not sufficient funds in or credit with such bank, or other depository, for the payment of such check, draft or order upon its presentation, shall be guilty of a misdemeanor. The making, drawing, utter-

ing, or delivering of such check, draft, or order as aforesaid shall be prima facie evidence of intent to defraud. The word 'credit' as used herein shall be construed to mean an arrangement or understanding with the bank or depository for the payment of such check, draft or order."

The State, by proving that Minich gave Taylor authority to deliver checks signed by him to any seller (which would include the sellers here in question) as consideration for cars purchased jointly for himself and Taylor and that, when such checks were presented for payment, the bank refused payment for insufficient funds, made out a prima facie case of intent to defraud against Minich under Code § 13-9933, above cited, and if nothing else had appeared, the judge sitting without the intervention of a jury would be authorized to find the defendant guilty. It is true that the defendant made a statement denying his guilt; but under our law, the judge, so sitting, has an unlimited discretion to accept the whole of the statement or to reject it in part or in its entirety; and if he rejected it in its entirety, he could base his judgment upon the evidence which made out a prima facie case for the State. *Jones* v. *State*, 71 *Ga. App.* 56, 57 (30 S. E. 2d, 284).

However, in this case such prima facie evidence was supported by other circumstances which we think at least import a thoughtless disregard of consequences or a heedless indifference to the rights of others to whom it was intended that these checks should be delivered for the purpose of purchasing automobiles in the business of Minich and Taylor. The slightest reasonable foresight would have revealed that any of the checks so given were likely to be turned down and result in injury or loss to the payees, who in the instant case were the sellers of the automobiles. In addition to the checks set out in counts one and two of the accusation on which Minich was found guilty, another bad check given on March 26 was duly presented for payment and was likewise turned down on account of insufficient funds; and in the month of March forty-eight checks were refused payment for the same reason. Minich, nevertheless, continued, by leaving in Taylor's hands old checks signed in blank or by signing new ones in blank, to authorize Taylor to use such checks, which were being continually turned down, for the purchase of

the property of others; and he continued to do so until April 12, 1947, when the bank closed out the Southeastern Motors' account by sending him a check for $9.15, which was the remaining balance in the account.

In the instant case other bad-check transactions introduced in evidence tended to show the intent of both Minich and Taylor to defraud in that the transactions were so connected in time and so similar in their other relations, that the same motive may be reasonably imputed to all of the transactions; and when it is shown that the defendant did similar acts about the same time to others, by means of which acts he obtained goods on bad checks, the prima facie case that he intended to cheat and swindle is greatly strengthened. In many cases of fraud, it would otherwise be impossible satisfactorily to establish the true nature and character of the act. *Farmer* v. *State*, 100 *Ga.* 41 (28 S. E. 26). The evidence amply supported the judgment of the trial judge, sitting without the intervention of a jury, in finding Minich guilty as charged in counts one and two of the accusation.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*